# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
# MARTINSBURG

**STANLEY M. MYERS,**

    Plaintiff,

v.                                                                                        **Civil Action No. 3:10-CV-77**
                                                                                        **(BAILEY)**

**GINA M. GROH, et al.,**

    Defendants.

## MEMORANDUM OPINION AND ORDER

Currently pending before this Court are Defendant Judge Gina M. Groh's Motion to Dismiss [Doc. 9], filed September 2, 2010, and the plaintiff's Motion to Strike [Doc. 15], filed September 22, 2010. The plaintiff responded to the motion to dismiss on October 1, 2010. The defendant responded to the motion to strike on October 1, 2010. The Court has reviewed the record and the arguments of the parties and, for the reasons set out below, concludes that the defendant's motion to dismiss should be **GRANTED**, and the plaintiff's motion to strike should be **DENIED**.

## BACKGROUND

### I. Factual History

Judge Gina M. Groh ("Judge Groh"), a circuit court judge for the Circuit Court of Berkeley County, West Virginia, presided over the following three criminal cases involving the plaintiff, Stanley M. Myers: (1) ***State v. Myers***, Case No. 95-F-44; (2) ***State v. Myers***,

1

Case No. 09-F-127; and **State v. Myers**, Case No. 10-F-22. ([Doc. 1] at 10-a).[1]

In **State v. Myers**, Case No. 95-F-44, the plaintiff was indicted for and convicted of three counts of first degree sexual assault and one count of third degree sexual assault. The victims were three prepubescent boys aged 7, 10, and 12. The plaintiff appealed his convictions, but his appeal was summarily denied by the Supreme Court of Appeals of West Virginia ("Supreme Court of Appeals") on June 25, 1997. However, in November 2002, the Supreme Court of Appeals granted the plaintiff habeas relief, after determining that the plaintiff received ineffective assistance of counsel. Further, the Supreme Court of Appeals found that the circuit judge circumvented the applicable rules of procedure by granting a motion for recusal and appointing another circuit judge to preside of the plaintiff's criminal case, thereby rendering the orders of the incorrectly appointed judge void. The plaintiff's criminal convictions were reversed, and the case was remanded for a new trial.

On February 25, 2003, the plaintiff pled guilty to three counts of first degree sexual abuse and one count of third degree sexual assault. Additionally, according to the terms of the plea agreement, the State asked the trial court to make a finding that the plaintiff was a "sexually violent predator" within the meaning of W.Va. Code § 15-12-2(k)-(m). This request was granted; however, the Conviction and Sentence Order entered by the trial court on March 25, 2003, used the term "sexual predator" rather than the statutory term "sexually violent predator." As such, following his release from the state penitentiary, the

---

[1] To provide sufficient factual background, the Court has supplemented the plaintiff's *pro se* Complaint [Doc. 1], using the public record of the three criminal proceedings. On a motion to dismiss, a court may consider "the [e]xhibits to the complaint, *matters of public record*, and other similar materials that are subject to judicial notice." **Pennington v. Teufel**, 396 F.Supp.2d 715 (N.D. W.Va. 2005) (citing **Anheuser-Busch, Inc. v. Schmoke**, 63 F.3d 1305, 1314 (4th Cir. 1995)) (emphasis added).

2

West Virginia State Police determined that it could not register the plaintiff as a "sexually violent predator" because the trial court's order did not contain the correct statutory language.

On June 12, 2009, Assistant Prosecutor Christopher Quasebarth ("Assistant Prosecutor Quasebarth") filed a Motion to Determine the Defendant to be a Sexually Violent Predator. The plaintiff filed a *pro se* response on June 16, 2009, and petitioned for a writ of prohibition in the Supreme Court of Appeals on January 11, 2010, seeking to halt this summary proceeding. The plaintiff's petition was denied, and on March 8, 2010, Judge Groh granted the State's Motion. Specifically, Judge Groh ordered the plaintiff to undergo a psychiatric evaluation and the West Virginia Sex Offender Registration Advisory Board to prepare and submit its findings and a recommendation as to whether the plaintiff is a "sexually violent predator." On July 6, 2010, Judge Groh entered a Final Order Determining the Defendant to be a Sexually Violent Predator. The plaintiff appealed this Order, and the appeal is pending before the Supreme Court of Appeals.

In ***State v. Myers***, Case No. 09-F-127, the plaintiff was named in a two-count indictment. In the first count, the plaintiff was charged with failure to register as a sex offender. In the second count, the plaintiff was charged with contributing to the delinquency of a minor. In ***State v. Myers***, Case No. 10-F-22, the plaintiff was indicted on two felony counts of failure to register as a sex offender. On March 9, 2010, Judge Groh granted a motion by Assistant Prosecutor Quasebarth to join these cases for trial and scheduled a trial to commence on September 14, 2010.[2]

---

[2]Due to the filing of this action, Judge Groh recused herself, and Judge Gray Silver, III was appointed. The new trial date is unknown.

In the criminal cases discussed above, the plaintiff filed *pro se* pleadings in both the trial court and the Supreme Court of Appeals. The plaintiff filed *pro se* pleadings in the trial court while represented by court-appointed counsel, James T. Kratovil. The plaintiff also filed *pro se* pleadings in the Supreme Court of Appeals in proceedings ancillary to these cases, both while Mr. Kratovil was retained and after he was appointed.

On June 29, 2010, Assistant Prosecutor Quasebarth filed a Motion to Bar Defendant from Filing Pro Se Pleadings while Represented by Appointed Counsel, or, in the Alternative, to Allow the Defendant to Represent Himself. On behalf of the plaintiff, Mr. Kratovil responded on July 2, 2010. Following argument by the State and the plaintiff's counsel, Judge Groh granted the State's motion on July 27, 2010. Specifically, Judge Groh ordered the plaintiff not to file in circuit court or the Supreme Court of Appeals any *pro se* pleadings in the three cases discussed above or "ancillary to, or seeking review of actions had or rulings made in, these three cases unless Defendant moves to represent himself and appointed counsel is removed from representation." ([Doc. 1-3] at 3). Next, Judge Groh ordered Deputy Circuit Clerk Martha Melnick ("Circuit Clerk Melnick") to "refuse to accept for filing any such *pro se* pleadings or papers from this Defendant which are related to these three cases." (Id.). Finally, Judge Groh addressed Mr. Kratovil regarding "the Defendant's practice of repetitiously requesting copies from the Circuit Court from these files and for documents that may have been filed so recently that they are not yet scanned." (Id.). Mr. Kratovil represented that "the Defendant is sometimes obtaining documents for him, but that he would speak with the Defendant about this practice." (Id.).

## II. **Procedural History**

On August 11, 2010, the plaintiff instituted the above-styled civil action in the this

Court against Judge Groh, Assistant Prosecutor Quasebarth, and Circuit Clerk Melnick, pursuant to 42 U.S.C. § 1983.  In the *pro se* Complaint, the plaintiff claims, *inter alia*, that Judge Groh's Order Restricting *Pro Se* Filings While Represented by Appointed Counsel "denied [him] his civil rights, i.e., his Constitutional right to have access to the Courts, his Constitutional right to self-representation in the State's highest Court (while at the same time exercising his right to assistance of Counsel in the Circuit Court below), and his Constitutional right to Petition the State's highest Court for grievances."  ([Doc. 1] at 11). Moreover, the plaintiff claims that Judge Groh has also improperly limited his "right to unfettered access to documents found in his own Court case files, which documents are a part of 'public record' and are, therefore, available to any member of the general public who wishes to examine or obtain copies of them."  (Id. at 10-11).

The plaintiff requests monetary, declaratory, and injunctive relief.  (Id. at 11-12). Specifically, the plaintiff requests: (1) an award of $50,000 in punitive damages from each of the defendants and (2) an order lifting the restrictions of Judge Groh's Order, restoring the plaintiff his "right to institute extraordinary writ proceedings under the original jurisdiction of the West Virginia Supreme Court of Appeals," and restoring his "unfettered right to examine and obtain copies of documents from his own Circuit Court case files, regardless of whether or not [he] has previously discussed his need for those documents with his Attorney."  (Id.).  Finally, the "[i]njunctive relief should include a bar of all future retaliation by the Defendants directed toward the Plaintiff."  (Id. at 12).

On September 2, 2010, Judge Groh filed the pending Motion to Dismiss [Doc. 9], arguing that the plaintiff's claims against her should be dismissed pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  Specifically, Judge Groh first contends that

the plaintiff's request for monetary relief is barred by the doctrine of absolute judicial immunity. ([Doc. 10] at 9-12). Next, Judge Groh argues that the plaintiff's remaining claims for relief should be dismissed under the abstention doctrine created in *Younger v. Harris*, 401 U.S. 37 (1971) ("*Younger* abstention"). (Id. at 12-19). Finally, Judge Groh asserts that prosecution of the plaintiff's Complaint is barred by the doctrine articulated in *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923) and *D.C. Court of Appeals v. Feldman*, 460 U.S. 462 (1983) ("*Rooker-Feldman* doctrine"). (Id. at 19-21). On the next day, this Court entered a *Roseboro* Notice [Doc. 11], informing the plaintiff that he had thirty (30) days to file any opposition to Judge Groh's motion.

On October 1, 2010, the plaintiff filed his Response [Doc. 16], arguing that he has stated meritorious claims against Judge Groh. First, the plaintiff asserts that he is not barred from recovering monetary damages from Judge Groh because she acted in the complete absence of all jurisdiction and outside the scope of her judicial duties by prohibiting the plaintiff from filing any pleadings ancillary to his criminal actions in the Supreme Court of Appeals while represented by court-appointed counsel. ([Doc. 17] at 7-13). Next, the plaintiff contends that *Younger* abstention is inapplicable because he is not seeking to enjoin the institution of a criminal action, the state proceedings do not provide an adequate opportunity to raise constitutional challenges, and Judge Groh's restriction concerning the plaintiff's filing of *pro se* writs of prohibition in the Supreme Court of Appeals presents an exception to *Younger*. (Id. at 13-28). Finally, the plaintiff argues that the *Rooker-Feldman* doctrine is inapplicable because the doctrine applies only to final judgments rendered by the highest court in any particular State, the plaintiff's federal claims

6

were not actually decided by Judge Groh, the criminal actions below remain pending, and his federal claims are not inextricably intertwined with the Judge Groh's Order. (Id. at 28-31).

In the meantime, on September 22, 2010, the plaintiff also filed the pending Motion to Strike [Doc. 15], pursuant to Rule 12(f)(2). In his motion, the plaintiff asks this Court to strike allegations in Judge Groh's supporting memorandum as, *inter alia*, immaterial and impertinent to the legal issues raised in the *pro se* Complaint. ([Doc. 15] at 1). In response, Judge Groh argues that no information in her supporting memorandum is impertinent, insofar as the information comes from matters of record pending before the Circuit Court of Berkeley County, or immaterial, insofar as the information demonstrates that the criminal matters in question are ongoing. ([Doc. 18] at 2-3).

## DISCUSSION

I. **Applicable Standards**

　　A.　**Rule 12(f)(2)**

Rule 12(f) of the Federal Rules of Civil Procedure allows a district court to strike, either on proper motion by a party or on its own initiative, any redundant, immaterial, impertinent, or scandalous matter in any pleading. Fed. R. Civ. P. 12(f). However, a motion to strike is generally viewed with disfavor, as "it is a drastic remedy." See **Waste Mgmt. Holdings, Inc. v. Gilmore**, 252 F.3d 316, 347 (4th Cir. 2001).

　　B.　**Rule 12(b)(1)**

A party may move to dismiss an action for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1). The burden of proving subject matter jurisdiction

7

on a Rule 12(b)(1) motion to dismiss is on the party asserting federal jurisdiction. A trial court may consider evidence by affidavit, deposition, or live testimony without converting the proceeding to one for summary judgment. ***Adams v. Bain***, 697 F.2d 1213, 1219 (4th Cir. 1982); ***Mims v. Kemp***, 516 F.2d 21 (4th Cir. 1975). Because the court's very power to hear the case is at issue in a Rule 12(b)(1) motion, the trial court is free to weigh the evidence to determine the existence of its jurisdiction. No presumptive truthfulness attaches to the plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims. *See* ***Materson v. Stokes***, 166 F.R.D. 368, 371 (E.D. Va. 1996). Whenever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action. *See* Fed. R. Civ. P. 12(h)(3).

    **C.**    **Rule 12(b)(6)**

In assessing a Rule 12(b)(6) motion for failure to state a claim, the court must accept the factual allegations contained in the complaint as true. ***Advanced Health-Care Servs., Inc. v. Radford Cmty. Hosp.***, 910 F.2d 139, 143 (4th Cir. 1990). A complaint must be dismissed if it does not allege "enough facts to state a claim to relief that is *plausible* on its face." ***Bell Atl. Corp. v. Twombly***, 127 S. Ct. 1955, 1974 (2007) (emphasis added).

"A complaint need only give 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" ***In re Mills***, 287 Fed.Appx. 273, 280 (4th Cir. 2008) (quoting Fed. R. Civ. P. 8(a)(2)). "Specific facts are not necessary; the statement need only give the defendant fair notice of what the ... claim is and the grounds upon which it rests." ***Id.*** (internal quotations and citations omitted). "[T]he pleading standard Rule 8

8

announces does not require detailed factual allegations, but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancements." **Ashcroft v. Iqbal**, — U.S. —, 129 S.Ct. 1937, 1949 (May 18, 2009)(internal quotations and citations omitted).

However, as this case involves a *pro se* plaintiff, this Court will only dismiss this matter if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." **Haines v. Kerner**, 404 U.S. 519 (1972).

## II. Analysis

### A. Plaintiff's Motion to Strike

In his motion, the plaintiff asks this Court to strike allegations in Judge Groh's supporting memorandum as immaterial and impertinent to the legal issues raised in the *pro se* Complaint.

"[O]nly allegations that are 'so unrelated to plaintiffs' claims as to be unworthy of any consideration as a defense' should be striken." **EEOC v. Ford Motor Co.**, 529 F.Supp. 643, 644 (D. Col. 1982) (quoting C. Wright & A. Miller, **Federal Practice and Procedure** § 1380 at 784 (1969)). Similarly, immateriality under Rule 12(f) has been defined as "any matter having no value in developing the issues of a case." **Oaks v. City of Fairhope, Ala.**, 515 F.Supp. 1004, 1032 (S.D. Ala. 1981).

Applying these strict standards to the instant case, the Court concludes that the plaintiff has failed to meet his burden under Rule 12(f). Specifically, upon a review of Judge

Groh's supporting memorandum, the Court finds no information to be impertinent or immaterial.  First, the information comes from matters of record pending before the Circuit Court of Berkeley County.  Second, the information demonstrates that the criminal matters involving the plaintiff are ongoing, which, as shown below, is crucial to Judge Groh's defense.  Accordingly, the Court finds that the plaintiff's motion to strike should be **DENIED**.

### B. Judge Groh's Motion to Dismiss

In her motion, Judge Groh provides three bases for dismissal, namely that: (1) the plaintiff's request for monetary relief is barred by the doctrine of absolute judicial immunity, (2) the plaintiff's remaining claims for relief should be dismissed under the *Younger* abstention doctrine, and (3) prosecution of the plaintiff's Complaint is barred by the *Rooker-Feldman* doctrine.

#### 1. Judicial Immunity

In the *pro se* Complaint, the plaintiff requests an award of $50,000 in punitive damages from Judge Groh.  In her motion to dismiss, Judge Groh argues that the plaintiff's request is barred by the doctrine of absolute judicial immunity.  In response, the plaintiff argues that he is not barred from recovering monetary damages from Judge Groh because she acted in the complete absence of all jurisdiction and outside the scope of her judicial duties by prohibiting the plaintiff from filing any pleadings ancillary to his criminal actions in the Supreme Court of Appeals while represented by court-appointed counsel.

As early as 1872, the Supreme Court of the United States already recognized judicial immunity as a firmly rooted principle of law that shields judicial officers from civil suit for actions taken in the exercise of their judicial functions:

> For it is a general principle of the highest importance to the proper administration of justice that a judicial officer, in exercising the authority vested in him, [should] be free to act upon his own convictions, without apprehension of personal consequences to himself.

*Bradley v. Fisher*, 80 U.S. 335, 347 (1872).

In *Bradley*, the Supreme Court further held that "judges of courts of superior or general jurisdiction are not liable to civil actions for their judicial acts, even when such acts are in excess of their jurisdiction, and are alleged to have been done maliciously or corruptly." *Id.* at 351. In fact, the bar of judicial immunity can only be overcome in two circumstances. First, a judge is not immune from liability for their non-judicial acts. *Stump v. Sparkman*, 435 U.S. 349, 360 (1978). Second, a judge is not immune for actions, though judicial in nature, were taken in complete absence of all jurisdiction. *Id.* at 356-57. To determine whether an act is judicial, a court should examine the nature of the act itself. *Id.* at 362. Specifically, the court should determine whether the act complained of is a function normally performed by a judge. *Id.* Moreover, a court should consider the expectations of the parties, i.e., whether the parties dealt with the judge in his or her official capacity.

Upon careful consideration of the above, the Court finds that the plaintiff is barred from recovering monetary damages from Judge Groh based upon judicial immunity. First, it cannot be disputed that the rulings made by Judge Groh in the underlying criminal cases constitute judicial acts. Without question, as a state trial court judge vested with the authority to preside over criminal cases, Judge Groh routinely rules on motions filed by the State and the defense, and she issues orders that memorialize her rulings. Further, there is no indication that Judge Groh has ever dealt with the plaintiff outside of her official

11

judicial capacity in the underlying criminal proceedings.  Second, the Court is unpersuaded that Judge Groh acted in complete absence of all jurisdiction by restricting the plaintiff from filing *pro se* writs of prohibition in the Supreme Court of Appeals while represented by court-appointed counsel in the criminal proceedings to which those writs are ancillary. Even assuming, *arguendo*, that this ruling exceeded Judge Groh's authority, it is insufficient to overcome the bar of judicial immunity because "[a] judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was *in excess of his authority* . . .." **Stump**, 435 U.S. 349, 356 (citing **Bradley**, 80 U.S. 335, 351) (emphasis added).

Accordingly, the Court finds that the plaintiff's claim for monetary damages against Judge Groh should be **DISMISSED**.

### 2. *Younger* Abstention

In the *pro se* Complaint, the plaintiff requests an order lifting the restrictions of Judge Groh's Order, restoring the plaintiff his "right to institute extraordinary writ proceedings under the original jurisdiction of the West Virginia Supreme Court of Appeals," and restoring his "unfettered right to examine and obtain copies of documents from his own Circuit Court case files, regardless of whether or not [he] has previously discussed his need for those documents with his Attorney." ([Doc. 1] at 11-12).  In her motion to dismiss, Judge Groh argues that this claim for equitable relief should be dismissed under *Younger* abstention. In response, the plaintiff argues that *Younger* is inapplicable because he is not seeking to enjoin the institution of a criminal action, the state proceedings do not provide an adequate opportunity to raise constitution challenges, and Judge Groh's prohibition concerning the

12

plaintiff's filing of *pro se* writs of prohibition in the Supreme Court of Appeals presents an exception to ***Younger***.

In ***Younger v. Harris***, 401 U.S. 37 (1971), the Supreme Court of the United States articulated an abstention doctrine to prevent federal courts from unwarranted involvement in pending state court criminal prosecutions, notwithstanding allegations of federal constitutional violations. The Fourth Circuit has recognized that ***Younger*** abstention should not be construed lightly:

> Absent a few extraordinary exceptions, ***Younger*** mandates that a federal court abstain from exercising jurisdiction interfering in a state criminal proceeding if (1) there is an ongoing state judicial proceeding brought prior to substantial progress in the federal proceeding; that (2) implicates important, substantial, or vital state interests; and (3) provides adequate opportunity to raise constitutional challenges.

***Nivens v. Gilchrist***, 444 F.3d 237, 241 (4th Cir. 2006) (citing ***Middlesex County Ethics Comm. v. Garden State Bar Ass'n***, 457 U.S. 423, 432 (1982)) (footnote omitted).

The Fourth Circuit then elaborated on those "few extraordinary exceptions," as follows:

> The Supreme Court has recognized that a federal court may disregard ***Younger***'s mandate only where (1) "there is a showing of bad faith or harassment by state official responsible for the prosecution"; (2) "the state law to be applied in the criminal proceeding is flagrantly and patently violative of express constitutional prohibitions"; or (3) "other extraordinary circumstances" exist that present a threat of immediate and irreparable injury.

***Nivens***, 444 F.3d at 241 (quoting ***Kugler v. Helfant***, 421 U.S. 117, 124 (1975)).

Upon careful consideration of the above, the Court finds that the plaintiff's claims for declaratory and injunctive relief are barred by ***Younger***. In other words, the elements of the doctrine are satisfied, and the plaintiff has failed to persuade the Court that one of the

13

exceptions applies.

With regard to the elements, the Court first notes that there are ongoing state criminal proceedings. In *State v. Myers*, Case No. 95-F-44, Judge Groh entered an order on July 27, 2010, determining that the plaintiff is a "sexually violent predator." A petition for appeal from this order is currently pending before the Supreme Court of Appeals. In *State v. Myers*, Case No. 09-F-127, and *State v. Myers*, Case No. 10-F-22, a joint trial is set to be rescheduled. Next, there can be no question that these cases implicate vital interest for the State of West Virginia. The State has the duty to protect its resident children from the unlawful actions of sexually violent predators. Lastly, the plaintiff has a mechanism in the state proceedings to raise his grievances, namely a motion for reconsideration or a direct appeal.

As for the exceptions, this Court is unpersuaded that any are applicable in the instant case. First, the plaintiff's allegations, taken as true, fail to support a finding that Judge Groh acted in bad faith. In so finding, the Court notes that the *pro se* filing restrictions are only applicable when the plaintiff is represented by court-appointed counsel. Similarly, and for the same reason, those restrictions cannot be characterized as "flagrant" or "patent" violations of the plaintiff's right to access the courts in West Virginia, or to represent himself in a criminal proceeding. Finally, the Court is not convinced that the filing restrictions "present a threat of immediate and irreparable injury." On this point, the Court emphasizes that the plaintiff has not sought relief from his alleged injury in state court, a requirement clearly contemplated by *Younger*.

Accordingly, the Court finds that the plaintiff's claims for declaratory and injunctive

relief in connection with the pending criminal proceedings below should be **DISMISSED**.[3]

## CONCLUSION

For the foregoing reasons, the Court finds that Defendant Judge Gina M. Groh's Motion to Dismiss **[Doc. 9]** should be, and hereby is, **GRANTED**. In addition, the plaintiff's Motion to Strike **[Doc. 15]** should be, and hereby is, **DENIED**. Accordingly, insofar as it attempts to state a claim against Defendant Judge Gina M. Groh, the Complaint **[Doc. 1]** should be, and hereby is, **DISMISSED WITH PREJUDICE**.

It is so **ORDERED**.

The Clerk is hereby directed to transmit copies of this Order to counsel of record and to mail a certified copy to the *pro se* plaintiff.

**DATED**: October 7, 2010.

JOHN PRESTON BAILEY
UNITED STATES DISTRICT JUDGE

---

[3]Insofar as all of the plaintiff's claims against Judge Groh are barred by judicial immunity or *Younger* abstention, and have been dismissed accordingly, the Court finds it unnecessary to decide whether the plaintiff's claims are also barred by the *Rooker-Feldman* doctrine.