**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**
**MARTINSBURG**

**STANLEY M. MYERS,**

    Plaintiff,

v.                                                                             **Civil Action No. 3:10-CV-77**
                                                                             **(BAILEY)**

**GINA M. GROH, et al.,**

    Defendants.

## MEMORANDUM OPINION AND ORDER

Currently pending before this Court are Defendants Quasebarth's and Melnick's Motion to Dismiss [Doc. 21] and Motion for Sanctions [Doc. 22], both filed October 10, 2010, and the plaintiff's Motion for Leave to File Surreply [Doc. 34], filed November 15, 2010. The plaintiff responded to the defendants' motions on October 29, 2010, the defendants replied on November 5, 2010, and the plaintiff surreplied to the motion to dismiss on November 8, 2010. The defendants responded to the motion for leave on November 16, 2010. The Court has reviewed the record and the arguments of the parties and, for the reasons set out below, concludes that the defendants' motion to dismiss should be **GRANTED**, the defendants' motion for sanctions should be **DENIED**, and the plaintiff's motion for leave should be **DENIED**.

## BACKGROUND

**I.**     **Factual History**

Judge Gina M. Groh ("Judge Groh"), a circuit court judge for the Circuit Court of

1

Berkeley County, West Virginia, presided over the following three criminal cases involving the plaintiff, Stanley M. Myers: (1) **State v. Myers**, Case No. 95-F-44; (2) **State v. Myers**, Case No. 09-F-127; and **State v. Myers**, Case No. 10-F-22. ([Doc. 1] at 10-a).[1]

In **State v. Myers**, Case No. 95-F-44, the plaintiff was indicted for and convicted of three counts of first degree sexual assault and one count of third degree sexual assault. The victims were three prepubescent boys aged 7, 10, and 12. The plaintiff appealed his convictions, but his appeal was summarily denied by the Supreme Court of Appeals of West Virginia ("Supreme Court of Appeals") on June 25, 1997. However, in November 2002, the Supreme Court of Appeals granted the plaintiff habeas relief, after determining that the plaintiff received ineffective assistance of counsel. Further, the Supreme Court of Appeals found that the circuit judge circumvented the applicable rules of procedure by granting a motion for recusal and appointing another circuit judge to preside of the plaintiff's criminal case, thereby rendering the orders of the incorrectly appointed judge void. The plaintiff's criminal convictions were reversed, and the case was remanded for a new trial.

On February 25, 2003, the plaintiff pled guilty to three counts of first degree sexual abuse and one count of third degree sexual assault. Additionally, according to the terms of the plea agreement, the State asked the trial court to make a finding that the plaintiff was a "sexually violent predator" within the meaning of W.Va. Code § 15-12-2(k)-(m). This request was granted; however, the Conviction and Sentence Order entered by the trial

---

[1]To provide sufficient factual background, the Court has supplemented the plaintiff's *pro se* Complaint [Doc. 1], using the public record of the three criminal proceedings. On a motion to dismiss, a court may consider "the [e]xhibits to the complaint, *matters of public record*, and other similar materials that are subject to judicial notice." **Pennington v. Teufel**, 396 F.Supp.2d 715 (N.D. W.Va. 2005) (citing **Anheuser-Busch, Inc. v. Schmoke**, 63 F.3d 1305, 1314 (4th Cir. 1995)) (emphasis added).

2

court on March 25, 2003, used the term "sexual predator" rather than the statutory term "sexually violent predator." As such, following his release from the state penitentiary, the West Virginia State Police determined that it could not register the plaintiff as a "sexually violent predator" because the trial court's order did not contain the correct statutory language.

On June 12, 2009, Assistant Prosecutor Christopher Quasebarth ("Assistant Prosecutor Quasebarth") filed a Motion to Determine the Defendant to be a Sexually Violent Predator. The plaintiff filed a *pro se* response on June 16, 2009, and petitioned for a writ of prohibition in the Supreme Court of Appeals on January 11, 2010, seeking to halt this summary proceeding. The plaintiff's petition was denied, and on March 8, 2010, Judge Groh granted the State's Motion. Specifically, Judge Groh ordered the plaintiff to undergo a psychiatric evaluation and the West Virginia Sex Offender Registration Advisory Board to prepare and submit its findings and a recommendation as to whether the plaintiff is a "sexually violent predator." On July 6, 2010, Judge Groh entered a Final Order Determining the Defendant to be a Sexually Violent Predator. The plaintiff appealed this Order, and the appeal is pending before the Supreme Court of Appeals.

In ***State v. Myers***, Case No. 09-F-127, the plaintiff was named in a two-count indictment. In the first count, the plaintiff was charged with failure to register as a sex offender. In the second count, the plaintiff was charged with contributing to the delinquency of a minor. In ***State v. Myers***, Case No. 10-F-22, the plaintiff was indicted on two felony counts of failure to register as a sex offender. On March 9, 2010, Judge Groh granted a motion by Assistant Prosecutor Quasebarth to join these cases for trial and scheduled a

trial to commence on September 14, 2010.[2]

In the criminal cases discussed above, the plaintiff filed *pro se* pleadings in both the trial court and the Supreme Court of Appeals. The plaintiff filed *pro se* pleadings in the trial court while represented by court-appointed counsel, James T. Kratovil. The plaintiff also filed *pro se* pleadings in the Supreme Court of Appeals in proceedings ancillary to these cases, both while Mr. Kratovil was retained and after he was appointed.

On June 29, 2010, Assistant Prosecutor Quasebarth filed a Motion to Bar Defendant from Filing Pro Se Pleadings while Represented by Appointed Counsel, or, in the Alternative, to Allow the Defendant to Represent Himself. On behalf of the plaintiff, Mr. Kratovil responded on July 2, 2010. Following argument by the State and the plaintiff's counsel, Judge Groh granted the State's motion on July 27, 2010. Specifically, Judge Groh ordered the plaintiff not to file in circuit court or the Supreme Court of Appeals any *pro se* pleadings in the three cases discussed above or "ancillary to, or seeking review of actions had or rulings made in, these three cases unless Defendant moves to represent himself and appointed counsel is removed from representation." ([Doc. 1-3] at 3). Next, Judge Groh ordered Deputy Circuit Clerk Martha Melnick ("Circuit Clerk Melnick") to "refuse to accept for filing any such *pro se* pleadings or papers from this Defendant which are related to these three cases." (Id.). Finally, Judge Groh addressed Mr. Kratovil regarding "the Defendant's practice of repetitiously requesting copies from the Circuit Court from these files and for documents that may have been filed so recently that they are not yet scanned." (Id.). Mr. Kratovil represented that "the Defendant is sometimes obtaining documents for

---

[2]Due to the filing of this action, Judge Groh recused herself, and Judge Gray Silver, III was appointed. The new trial date is unknown.

4

him, but that he would speak with the Defendant about this practice." (Id.).

## II. Procedural History

On August 11, 2010, the plaintiff instituted the above-styled civil action in the this Court against Judge Groh, Assistant Prosecutor Quasebarth, and Circuit Clerk Melnick, pursuant to 42 U.S.C. § 1983. In the *pro se* Complaint, the plaintiff claims, *inter alia*, that Judge Groh's Order Restricting *Pro Se* Filings While Represented by Appointed Counsel "denied [him] his civil rights, i.e., his Constitutional right to have access to the Courts, his Constitutional right to self-representation in the State's highest Court (while at the same time exercising his right to assistance of Counsel in the Circuit Court below), and his Constitutional right to Petition the State's highest Court for grievances." ([Doc. 1] at 11). Moreover, the plaintiff claims that Judge Groh has also improperly limited his "right to unfettered access to documents found in his own Court case files, which documents are a part of 'public record' and are, therefore, available to any member of the general public who wishes to examine or obtain copies of them." (Id. at 10-11).

The plaintiff requests monetary, declaratory, and injunctive relief. ([Doc. 1] at 11-12). Specifically, the plaintiff requests: (1) an award of $50,000 in punitive damages from each of the defendants and (2) an order lifting the restrictions of Judge Groh's Order, restoring the plaintiff his "right to institute extraordinary writ proceedings under the original jurisdiction of the West Virginia Supreme Court of Appeals," and restoring his "unfettered right to examine and obtain copies of documents from his own Circuit Court case files, regardless of whether or not [he] has previously discussed his need for those documents with his Attorney." (Id.). Finally, the "[i]njunctive relief should include a bar of all future retaliation by the Defendants directed toward the Plaintiff." (Id. at 12).

On October 7, 2010, this Court dismissed Judge Groh with prejudice, citing judicial immunity and the abstention doctrine articulated in ***Younger v. Harris***, 401 U.S. 37 (1971) [Doc. 19]. Specifically, the Court found Judge Groh immune from claims for monetary relief, (Id. at 10-12), and that the Court should abstain from considering the plaintiff's requests for injunctive relief. (Id. at 12-15).

On October 10, 2010, the defendants filed the instant Motion to Dismiss [Doc. 21], presenting seven (7) arguments for why the plaintiff has failed to state a claim against them upon which relief may be granted. First, the plaintiff's request for injunctive relief should be dismissed based upon ***Younger*** abstention, which is now the law of the case. (Id. at 3-7). Second, the plaintiff's claim for monetary relief against Defendant Quasebarth is barred by the doctrine of prosecutorial immunity. (Id. at 7-8). Third, the plaintiff's claims are barred by the doctrine articulated in ***Rooker v. Fidelity Trust Co.***, 263 U.S. 413 (1923) and ***D.C. Court of Appeals v. Feldman***, 460 U.S. 462 (1983) ("***Rooker-Feldman*** doctrine"). (Id. at 8-9). Fourth, Judge Groh's Order Restricting *Pro Se* Filings While Represented by Appointed Counsel is entirely proper. (Id. at 9-10). Fifth, the plaintiff has failed to allege a causal connection between Defendant Melnick's alleged actions and the alleged deprivation of the plaintiff's constitutional rights. (Id. at 10-11). Sixth, the plaintiff cannot recover punitive damages in a § 1983 action. (Id. at 11). Seventh, the plaintiff's claims are barred by the West Virginia Governmental Tort Claims and Insurance Reform Act ("WVTCA"), W.Va. Code § 29-12A-1, *et al*. (Id.).

On the same day, the defendants filed the instant Motion for Sanctions [Doc. 22]. Specifically, the defendants contend that the plaintiff's Complaint violates Federal Rule 11

of Civil Procedure insofar as it is not well-founded in law or fact. (Id. at ¶ 6). As such, the defendants ask the Court to award them "their fees and costs incurred in defending this unfounded civil action and such other relief as the Court may deem just." (Id. at 2).

On October 29, 2010, the plaintiff amended his Complaint to provide additional allegations in support of his claim against Defendant Melnick [Doc. 26]. The plaintiff alleges that on the morning of July 6, 2010, the date of the hearing from which the Order in question arose, he went to the window of a deputy clerk, handed her a copy of his docket sheet, and requested a copy of the Order appointing Kratovil as his attorney. (Id. at ¶ 2). Defendant Melnick, overhearing his request, informed the plaintiff that "their computers were 'down' and that they could not provide him with a copy of the requested document, because the paper file for Case No. 10-F-22 was on Judge Groh's desk in preparation for the upcoming hearing," which was to begin at 9:30 a.m. (Id. at ¶ 3). However, both the plaintiff and his cousin who had accompanied him could see that the computer system was up and working at an adjacent window. (Id.). The plaintiff then complains that Defendant Melnick did not "attempt to obtain [the requested document] from the paper files on Judge Groh's desk during the course of the hearing . . . and offer to provide the Plaintiff with a copy." (Id.). The plaintiff claims that Defendant Melnick had, and still has, a statutory duty to provide copies of public records in the Circuit Clerk's Office to anyone who requests them. (Id. at ¶ 8). By refusing to abide by this duty, the plaintiff claims Defendant Melnick has: "(a) denied him access to the Court and/or restricted his future access to the same; and, (b) interfered with the Plaintiff's right to petition this State's highest Court for grievances . . . ." (Id. at ¶ 11). Moreover, the plaintiff alleges that on the same morning, Defendant Melnick "went to Defendant Groh and, in the course of an ex parte conversation,

alleged that the Plaintiff had been trying to obtain copies of documents that had been so recently entered that they had not yet been scanned into the system." (Id. at ¶ 4).

On the same day, the plaintiff responded to the defendants' motions [Docs. 27 & 28]. In response to the motion to dismiss, the plaintiff argues that *Younger* abstention is inapplicable, Defendant Quasebarth is not entitled to prosecutorial immunity, the *Rooker-Feldman* doctrine is inapplicable, the propriety of Judge Groh's Order is irrelevant, he has stated a claim against Defendant Melnick, punitive damages are available in this case, and the WVTCA is inapplicable. ([Doc. 28] at 2-17). As for the defendants' request for sanctions, the plaintiff argues that "a review of his Complaint and associated pleadings will reveal that his prefiling investigation has met the standards set forth in Rule 11(b)(2) & (3), Fed.R.Civ[.]Proc. with respect to both the **objective reasonableness** standard for law and the **some evidentiary support** standard for facts." ([Doc. 27] at 7) (emphasis in original).

On November 5, 2010, the defendants filed replies in support of their motions [Docs. 29 & 30] and responded to the plaintiff's amendment regarding his claims against Defendant Melnick [Doc. 31]. In support of their motion to dismiss, the defendants reassert and supplement their previous arguments, except for their argument concerning the WVTCA. ([Doc. 30] at 1-8). As for their request for sanctions, the defendants argue that Rule 11 sanctions are appropriate to deter the plaintiff from "mak[ing] reckless attacks on public employees" and from "filing another completely frivolous lawsuit against public employees in the future." ([Doc. 29] at 1-2). In response to the plaintiff's new factual allegations against Defendant Melnick, the defendants argue that the plaintiff has still failed to allege a causal connection between Defendant Melnick's alleged actions and a

deprivation of constitutional rights. ([Doc. 31] at 2-3).

On November 8, 2010, the plaintiff filed a Surreply [Doc. 32] to the defendants' motion to dismiss, attempting to provide further support for his argument that the ***Rooker-Feldman*** doctrine is inapplicable. The defendants responded on November 11, 2010, that the Court should disregard the plaintiff's Surreply because he failed to seek leave beforehand [Doc. 33]. On November 15, 2010, the plaintiff filed the instant Motion for Leave to File Surreply [Doc. 34]. The defendants responded the next day that the Court should still disregard the plaintiff's Surreply because of his failure to seek leave before filing his Surreply [Doc. 35].

Insofar as the Court does not rely on the ***Rooker-Feldman*** doctrine in the disposition of the defendants' motion to dismiss, the Court finds it unnecessary to consider the plaintiff's Surreply. Accordingly, the Court hereby **DENIES** the plaintiff's motion for leave.

### DISCUSSION

I. **Applicable Standards**

A. **Rule 12(b)(1)**

A party may move to dismiss an action for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1). The burden of proving subject matter jurisdiction on a Rule 12(b)(1) motion to dismiss is on the party asserting federal jurisdiction. A trial court may consider evidence by affidavit, deposition, or live testimony without converting the proceeding to one for summary judgment. ***Adams v. Bain***, 697 F.2d 1213, 1219 (4th Cir. 1982); ***Mims v. Kemp***, 516 F.2d 21 (4th Cir. 1975). Because the court's very power

to hear the case is at issue in a Rule 12(b)(1) motion, the trial court is free to weigh the evidence to determine the existence of its jurisdiction. No presumptive truthfulness attaches to the plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims. *See* **Materson v. Stokes**, 166 F.R.D. 368, 371 (E.D. Va. 1996). Whenever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action. *See* Fed. R. Civ. P. 12(h)(3).

    **B.**    **Rule 12(b)(6)**

In assessing a Rule 12(b)(6) motion for failure to state a claim, the court must accept the factual allegations contained in the complaint as true. **Advanced Health-Care Servs., Inc. v. Radford Cmty. Hosp.**, 910 F.2d 139, 143 (4th Cir. 1990). A complaint must be dismissed if it does not allege "enough facts to state a claim to relief that is *plausible* on its face." **Bell Atl. Corp. v. Twombly**, 127 S. Ct. 1955, 1974 (2007) (emphasis added).

"A complaint need only give 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" **In re Mills**, 287 Fed.Appx. 273, 280 (4th Cir. 2008) (quoting Fed. R. Civ. P. 8(a)(2)). "Specific facts are not necessary; the statement need only give the defendant fair notice of what the ... claim is and the grounds upon which it rests." ***Id.*** (internal quotations and citations omitted). "[T]he pleading standard Rule 8 announces does not require detailed factual allegations, but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertions devoid of further factual

enhancements." *Ashcroft v. Iqbal*, — U.S. —, 129 S.Ct. 1937, 1949 (May 18, 2009)(internal quotations and citations omitted).

However, as this case involves a *pro se* plaintiff, this Court will only dismiss this matter if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Haines v. Kerner*, 404 U.S. 519 (1972).

### C. Rule 11

"If, after notice and a reasonable opportunity to respond, the court determines that Rule 11(b) has been violated, the court may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation." Fed. R. Civ. P. 11(c)(1). A party violates Rule 11(b) if his legal contentions are not "warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law," or his factual contentions do not "have evidentiary support or . . . will [not] likely have evidentiary support after a reasonable opportunity for further investigation or discovery." Fed. R. Civ. P. 11(b)(2) & (3).

"While a *pro se* complaint is held to less stringent standards than formal pleadings drafted by trained lawyers, *Haines v. Kerner*, 404 U.S. 519, 520 (1971), *pro se* plaintiffs are not excused from the requirements of Rule 11. Fed. R. Civ. P. 11 Advisory Committee Notes; *Schaffer v. Chicago Police Officers*, 120 F.R.D. 514, 516 (N.D. Ill. 1988). A court may take a person's status as a *pro se* litigant into account, however, when considering Rule 11 sanctions." *Martin v. Farmers First Bank*, 151 F.R.D. 44, 48 (E.D. Pa. 1993).

## II.     Analysis

### A.     Defendants' Motion to Dismiss

In their motion, the defendants provide three bases for dismissal, namely that: (1) the plaintiff's request for monetary relief from Defendant Quasebarth is barred by the doctrine of prosecutorial immunity; (2) the plaintiff's request for monetary relief from Defendant Melnick is unsupported by an allegation of a causal connection; and (3) the plaintiff's remaining claims for relief should be dismissed under the *Younger* abstention doctrine, which the defendants argue is now the law of the case.

#### 1.     Claims for Monetary Relief

In the *pro se* Complaint, the plaintiff requests an award of $50,000 in punitive damages from each of the defendants, including Defendant Quasebarth and Defendant Melnick. The Court will now address each claim for monetary relief, in turn.

##### i.     Defendant Quasebarth:  Prosecutorial Immunity

Defendant Quasebarth argues that the plaintiff's claim for monetary relief is barred by prosecutorial immunity. The plaintiff responds that immunity is not appropriate because "Defendant Quasebarth was acting clearly outside the scope of his jurisdiction, when he sought to prohibit the Plaintiff from invoking the original jurisdiction of the West Virginia Supreme Court through his pro se filings." ([Doc. 28] at 7, n. 4). In reply, Defendant Quasebarth argues that he "was acting within his role as a prosecutor, as an integral part of the judicial process and intimately associated with the judicial phase of the criminal process." ([Doc. 30] at 2).

In *Imbler v. Pachtman*, 424 U.S. 409 (1976), the Supreme Court of the United

States held that, "in initiating a prosecution and in presenting the State's case, [a] prosecutor is immune from a civil suit for damages under § 1983." **Id.** at 431.  In so holding, the Court made clear that this immunity is absolute because "qualifying a prosecutor's immunity would disserve the broader public interest [by] prevent[ing] the vigorous and fearless performance of the prosecutor's duty that is essential to the proper functioning of the criminal justice system." **Id.** at 427-28.  Finally, in "delineat[ing] the boundaries of [its] holding," the Court explained that this absolute immunity protects a prosecutor's activities that are "intimately associated with the judicial phase of the criminal process." **Id.** at 430.

Upon careful consideration of the above, the Court finds that Defendant Quasebarth is entitled to absolute immunity for filing and arguing his Motion to Bar Defendant from Filing Pro Se Pleadings while Represented by Appointed Counsel, or, in the Alternative, to Allow the Defendant to Represent Himself.  In particular, the Court finds that Defendant Quasebarth's request that Judge Groh limit the plaintiff's *pro se* filings while represented by appointed counsel was an activity "intimately associated with the judicial phase of the criminal process." **Imbler**, 424 U.S. at 430.

While a criminal defendant has a Sixth Amendment right to be represented by an attorney, he has no right to act as co-counsel, as the plaintiff attempted by filing his *pro se* writs of prohibition.  **United States v. Tarantino**, 846 F.2d 1384, 1420 (D.C. Cir.), *cert. denied*, 488 U.S. 867 (1988); **State v. Sheppard**, 172 W.Va. 656, 673, 310 S.E.2d 173, 190 (1983).  It was within the sound discretion of Judge Groh to allow the plaintiff to assume some of his lawyer's functions, that is, to engage in "hybrid representation."  *See*

13

*United States v. LaChance*, 817 F.2d 1491 (11th Cir.), *cert. denied*, 484 U.S. 928 (1987); *Sheppard*, 310 S.E.2d at 190-91.  As such, it was by no means an activity outside "the judicial phase of the criminal process" for Defendant Quasebarth to call upon Judge Groh's discretion to limit the plaintiff's *pro se* filings while represented by court-appointed counsel.

Accordingly, the Court hereby **DISMISSES** the plaintiff's claim for monetary relief from Defendant Quasebarth as barred by prosecutorial immunity.

### ii. Defendant Melnick:  Inadequately Pled

Defendant Melnick argues that the plaintiff's claim for monetary relief is inadequately pled because the plaintiff has failed to allege a causal connection between her alleged acts and the plaintiff's alleged constitutional deprivation.  The plaintiff responds that his Complaint "does, indeed contain allegations of impermissible conduct on the part of [Defendant] Melnick." ([Doc. 28] at 13).  In reply, Defendant Melnick argues that, even accepting the plaintiff's allegations of misconduct as true, the plaintiff has failed to state a constitutional claim.  (See [Doc. 30] at 6-7).  This Court agrees.

In support of his § 1983 claim against Defendant Melnick, the plaintiff appears to rely upon two allegations of misconduct: (1) she did not "attempt to obtain [a court document] from the paper files on Judge Groh's desk during the course of [a] hearing . . . and offer to provide the Plaintiff with a copy" and (2) she "went to Defendant Groh and, in the course of an ex parte conversation, alleged that the Plaintiff had been trying to obtain copies of documents that had been so recently entered that they had not yet been scanned into the system." ([Doc. 26] at ¶¶ 3-4).  Even assuming these allegations are true, the Court is not persuaded that the plaintiff has stated a claim for a constitutional deprivation.

First, the plaintiff has been unable to identify constitutional or statutory authority that required Defendant Melnick to remove his file from Judge Groh's desk on the morning of a hearing in his case. Similarly, the Court is unaware of any constitutional or statutory authority that prevented Defendant Melnick from sharing with Judge Groh the plaintiff's repetitious requests for documents not yet scanned. As such, the plaintiff has failed to allege a constitutional deprivation necessary to support a § 1983 claim.

Accordingly, the Court hereby **DISMISSES** the plaintiff's claim for monetary relief from Defendant Melnick as inadequately pled.

### 2. Claims for Equitable Relief

In the *pro se* Complaint, the plaintiff also requests an order lifting the restrictions of Judge Groh's Order, restoring the plaintiff his "right to institute extraordinary writ proceedings under the original jurisdiction of the West Virginia Supreme Court of Appeals," and restoring his "unfettered right to examine and obtain copies of documents from his own Circuit Court case files, regardless of whether or not [he] has previously discussed his need for those documents with his Attorney." ([Doc. 1] at 11-12). In their motion to dismiss, the defendants argue that this claim for equitable relief should be dismissed under **Younger** abstention, which they claim is the law of the case. This Court agrees.

The doctrine of law of the case precludes a court from reopening issues that it has already decided. **Agostini v. Felton**, 521 U.S. 203, 236 (1997); **United States. v. United States Smelting Refining & Mining Co.**, 339 U.S. 186, 198 (1950) ("The rule of law of the case is a rule of practice, based on a sound policy that when an issue is once litigated, that should be the end of the matter."). This Court has already decided that "the plaintiff's

claims for declaratory and injunctive relief are barred by *Younger*." ([Doc. 19] at 14). Thus, this Court need not reopen the issue.

### C. Defendants' Motion for Sanctions

Finally, the defendants move for Rule 11 sanctions against the plaintiff. In support of their motion, the defendants argue that the plaintiff's Complaint has no basis in law or fact.

"While a *pro se* complaint is held to less stringent standards than formal pleadings drafted by trained lawyers, **Haines v. Kerner**, 404 U.S. 519, 520 (1971), *pro se* plaintiffs are not excused from the requirements of Rule 11. Fed. R. Civ. P. 11 Advisory Committee Notes; **Schaffer v. Chicago Police Officers**, 120 F.R.D. 514, 516 (N.D. Ill. 1988). A court may take a person's status as a *pro se* litigant into account, however, when considering Rule 11 sanctions." **Martin v. Farmers First Bank**, 151 F.R.D. 44, 48 (E.D. Pa. 1993).

Upon careful consideration of the above, the Court exercises its discretion to deny sanctions in this case. Accordingly, the defendants' motion for sanctions should be **DENIED**.

### CONCLUSION

For the foregoing reasons, the Court finds that Defendants Quasebarth's and Melnick's Motion to Dismiss **[Doc. 21]** should be, and hereby is, **GRANTED**. In addition, the Court finds that Defendants Quasebarth's and Melnick's Motion for Sanctions **[Doc. 22]** should be, and hereby is, **DENIED**. Finally, the plaintiff's Motion for Leave to File Surreply **[Doc. 34]** should be, and hereby is, **DENIED**. Accordingly, the Complaint **[Doc. 1]**, as amended **[Doc. 26]**, should be, and hereby is, **DISMISSED WITH PREJUDICE** and

**ORDERED STRICKEN** from the active docket of this Court.

It is so **ORDERED**.

The Clerk is hereby directed to transmit copies of this Order to counsel of record and to mail a certified copy to the *pro se* plaintiff.

**DATED**: November 23, 2010.

/s/ John Preston Bailey
JOHN PRESTON BAILEY
UNITED STATES DISTRICT JUDGE